**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

2019 CA 0166

DANIEL P. MARTIN

VERSUS

DQSI, LLC, SHELLY S. STUBBS AND MICHAEL A. STUBBS

Judgment rendered___OCT 0 1 2019___

* * * * *

On Appeal from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
No. 2016-15179, Div. "D"

The Honorable Peter J. Garcia, Judge Presiding

* * * * *

| | |
|---|---|
| Dominick M. Bianca<br>Baton Rouge, Louisiana | Attorney for Plaintiff/Appellant<br>Daniel P. Martin |
| Timothy S. Madden<br>John A. Cangelosi<br>Diana J. Master<br>New Orleans, Louisiana | Attorneys for Defendants/Appellees<br>DQSI, LLC, Shelly S. Stubbs, and<br>Michael A. Stubbs |

* * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

McClendon, J. concurs in the result reached by the majority.

**HOLDRIDGE, J.**

Plaintiff, Daniel P. Martin (Mr. Martin), appeals from a judgment of the trial court dismissing his suit against DQSI, LLC; Shelly S. Stubbs (Ms. Stubbs); and Michael A. Stubbs (Mr. Stubbs) after granting their exception raising the objection of prescription. From that judgment, Mr. Martin appeals. For the reasons below, we affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Mr. Martin was the sole member and owner of Terra Logistics, LLC, a general contractor. Ms. Stubbs was the sole member and owner of DQSI, a computer and software consulting company, and Mr. Stubbs was the construction manager and secretary of DQSI. In exchange for the necessary financial capital to bid on a levee project, Mr. Martin assigned a 51% membership interest in Terra Logistics to DQSI. He retained a 49% membership interest in Terra Logistics. On February 10, 2011, Mr. Martin executed an Assignment of Limited Liability Company Interest between Terra Logistics and DQSI reflecting the assignment, and he also executed an Operating Agreement for Terra Logistics. According to Mr. Martin, he was to act as the qualifying licensed contractor to perform the levee project since DQSI did not hold a Louisiana contractor's license because it was primarily engaged in a non-construction business. On February 10, 2011, Mr. Martin submitted a Louisiana Uniform Public Works Bid Form for Terra Logistics for the levee project for $9,626,073.01; the bid was accepted and the levee project was awarded to Terra Logistics.

After nine months of work on the levee project, Mr. Martin alleged he had not received any distributions from Terra Logistics. He requested a review of Terra Logistics' books, and on December 9, 2011, Ms. Stubbs gave him a "Profit & Loss Report," "Balance Sheet," and "Transaction Detail by Account" report

2

showing Terra Logistics' payments to subcontractors from March 1, 2011, through November 30, 2011. According to Mr. Martin, after examining these documents, he discovered that the Stubbses individually and on behalf of DQSI allegedly entered into numerous subcontracts where Terra Logistics was the prime contractor and DQSI was the subcontractor in order to intentionally divert profits away from Mr. Martin directly to the Stubbses through DQSI. He alleged that certain services were subcontracted to DQSI, but were actually performed by Terra Logistics employees. He also alleged that the Stubbses individually and on behalf of DQSI overcharged Terra Logistics for work and equipment to intentionally deplete Terra Logistics' income. Mr. Martin alleged that during the levee project, the Stubbses maintained Terra Logistics with a negative cash flow and it became indebted to DQSI in excess of $4,000,000.00.

On December 14, 2016, Mr. Martin filed suit against DQSI and the Stubbses seeking to nullify the assignment and operating agreement and to obtain damages for "breach of fiduciary duty, breach of loyalty, self-dealing, related-party transactions, unjust enrichment, gross negligence, mismanagement[,] deceit[,] and fraud all in connection with the management and operation of Terra Logistics, LLC by DQSI, LLC, [Ms.] Stubbs and [Mr.] Stubbs." He alleged that the assignment of interest and operating agreement did not reflect the true intentions of the parties, such that there was no meeting of the minds. He also alleged that the defendants induced him into signing the agreements by fraudulently representing to him that he would receive a 49% share of the profits of Terra Logistics, which was equal to his remaining membership interest in the company.

In response to the petition, the defendants filed dilatory exceptions raising the objections of vagueness as to the failure of the petition to state with particularity the circumstances supporting his fraud claims, and of nonconformity

3

of the petition with La. C.C.P. art. 891. The trial court granted the defendants' exceptions of vagueness and nonconformity and granted Mr. Martin leave to amend his petition.

Mr. Martin filed his first supplemental and amending petition on July 31, 2017. In the amending petition, Mr. Martin alleged that he met with the Stubbses on January 28, 2011, to discuss the details of the arrangement between DQSI and Terra Logistics. He alleged that at the meeting, the parties agreed that DQSI would provide security for the surety bond, the initial working capital, and a nominal $510.00 cash payment to Mr. Martin, and that Ms. Stubbs would become the managing member of Terra Logistics. According to Mr. Martin, he was to provide sole project/construction management and supervision over the levee project. He alleged that the Stubbses represented that other than office and accounting support, all other aspects of the project would be performed by Terra Logistics, but instead they subcontracted the work to DQSI. According to Mr. Martin, at the meeting on January 28, 2011, the Stubbses told him that DQSI employees would provide office and accounting support to Terra Logistics, but they overcharged Terra Logistics for those services. He also referred to leased equipment and machinery for which DQSI overcharged Terra Logistics. The defendants did not pay Mr. Martin the monetary consideration required by the assignment.

In response to the first amending petition, the defendants filed peremptory exceptions raising the objections of res judicata, preclusion by judgment, prescription, no right of action, and non-joinder. On the day before the hearing on the exceptions, the defendants fax-filed a second amending petition, which the trial

4

court did not consider at the hearing.[1] The trial court granted the exception of prescription and dismissed Mr. Martin's suit with prejudice.[2] Mr. Martin filed a motion for new trial, which the trial court denied. Mr. Martin appeals, asserting as error the trial court's grant of the prescription exception as to his action to nullify the assignment and as to his action for fraud, the trial court's failure to consider the second amending petition, and the trial court's grant of the prescription exception as to Mr. Martin's action for breach of contract.

## APPLICABLE LAW

An objection of prescription is a peremptory exception. La. C.C.P. art. 927(A)(1). At the trial of a peremptory exception, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition. La. C.C.P. art. 931. Ordinarily, the party pleading the exception of prescription bears the burden of proving the claim has prescribed. **Hogg v. Chevron USA, Inc.,** 2009-2632 (La. 7/6/10), 45 So.3d 991, 998. However, when the face of the petition reveals that the plaintiff's claim has prescribed, the burden shifts to the plaintiff to show why the claim has not prescribed. **Id**. When, as in this case, no evidence is introduced at the hearing to support or controvert the exception of prescription, the exception must be decided upon facts alleged in the petition with all allegations accepted as true. **Cichirillo v. Avondale Industries, Inc.,** 2004-2894 (La. 11/29/05), 917 So.2d 424, 428. If no evidence is introduced to support or controvert the exception, the manifest error standard of review does not apply, and the appellate court's role is to determine

---

[1] The defendants attached to their memorandum in support of their exceptions the petition in a prior suit Mr. Martin filed against them on October 5, 2012, arising out of the same agreements, and the trial court's judgment and reasons for judgment dismissing that suit without prejudice on a peremptory exception of no right of action on March 27, 2013.

[2] The trial court did not consider or rule on the other exceptions.

whether the trial court's ruling was legally correct. **Stolzle v. Clayton**, 2018-1641 (La. App. 1 Cir. 7/11/19), ____ So.3d ____, ___ (2019 WL 3024862). Moreover, as a general rule, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished. **Taranto v. Louisiana Citizens Property Ins. Corp.**, 2010-0105 (La. 3/15/11), 62 So.3d 721, 726.

The prescriptive period applicable to an action is determined by the character of the action disclosed in the pleadings. **Fishbein v. State ex rel. Louisiana State University Health Sciences Center**, 2004-2482 (La. 4/12/05), 898 So.2d 1260, 1265. In their exception of prescription, the defendants contended that the applicable prescriptive periods for Mr. Martin's actions against Ms. Stubbs and Mr. Stubbs were those applicable to actions against persons who control business organizations, including but not limited to officers, members, managers, or other persons similarly situated pursuant to La. R.S. 12:1502.[3] The defendants contended that as to Mr. Martin's action against DQSI, the one-year prescriptive period for delictual actions set forth in La. C.C. art. 3492 was applicable. See also La. C.C. art. 2315. The trial court at the hearing considered the action one in tort and then found the controlling prescriptive period to be three years. Mr. Martin contends in his first assignment of error that the five-year prescriptive period set forth in La. C.C. art. 2032 for actions to annul a relatively null contract applies, such that his petition was timely.[4]

---

[3] Louisiana Revised Statute 12:1502(A) provides:

> The provisions of this Section shall apply to all business organizations formed under the laws of this state and shall be applicable to actions against any officer, director, shareholder, member, manager, general partner, limited partner, managing partner, or other person similarly situated. The provisions of this Section shall not apply to actions governed by R.S. 12:1-622, 1-833, 1-1407, or 1328(C).

[4] At the trial court, Mr. Martin contended that he sought nullification of the assignment and operating agreement due to fraud affecting his consent to the transactions and that the damages

6

In the original and first amending petitions, Mr. Martin asserted a claim to nullify the assignment and operating agreement and a claim for damages for "breach of fiduciary duty, breach of loyalty, self-dealing, related-party transactions, unjust enrichment, gross negligence, mismanagement[,] deceit[,] and fraud." In his petition, Mr. Martin alleged that "[t]he actions of DQSI through [Ms.] Stubbs and [Mr.] Stubbs" constituted fraud as they intentionally misrepresented to Mr. Martin that he would receive a share of profits from the levee project equivalent to his percentage of membership interest in order to obtain an undue advantage over him; that their true intent was to divert profits from him; and that he would not have entered into those agreements had he known their fraudulent intentions.

Louisiana Civil Code article 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." In order to succeed on an action for fraud against a party to a contract, three elements must be proved: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. **Robinson v. Wayne and Beverly Papania and Pyrenees Investments, LLC**, 2015-1354 (La. App. 1 Cir. 10/31/16), 207 So.3d 566, writ denied, 2016-2113 (La. 3/13/17), 216 So.3d 808. Mr. Martin's allegations set forth an action for fraud against DQSI, such as in paragraph 18 of the original petition, where Mr. Martin alleged the following:

> DQSI through [Ms.] Stubbs and [Mr.] Stubbs fraudulently induced [Mr.] Martin to enter into the Assignment of Interest and Operating Agreement through the misrepresentation of the true and

---

he sought were based on the ensuing absence of those agreements, such that contract law was applicable, not La. R.S. 12:1502.

7

clandestine intentions to divert profits from [Mr.] Martin during the Levee Project. This [f]raudulent inducement materially affected [Mr.] Martin's understanding of the true terms of the venture in which he would not [have] entered had he known of these fraudulent intentions.

We disagree with the defendants' characterization of Mr. Martin's claim against DQSI as delictual and subject to a one-year prescriptive period because the cases they rely on do not involve a direct contractual relationship between the complaining party or victim of fraud and the perpetrator of the fraud.[5] While the defendants argued below that Mr. Martin's allegations in his petition did not assert claims against DQSI directly, we disagree. In this case, we must accept the allegations of the original and first amending petitions as true, and Mr. Martin alleged that he contracted with DQSI and the fraud was allegedly committed by DQSI through the Stubbses. We note that the actual assignment and actual operating agreement may not show such a contractual relationship, but without that evidence, we are constrained to accept the allegations of the petitions as true. See **Cichirillo**, 917 So.2d at 428.

Fraud is one of the three vices of consent in a contractual relationship. See La. C.C. art. 1948. When a party does not give his consent freely at the time the contract is made, the contract is a relative nullity. See La. C.C. art. 2031. The prescriptive period for a claim to annul a relatively null contract is fixed by La.

---

[5] The defendants rely on the following cases for their contention that a one-year prescriptive period governs the nullification of the assignment claims: **Patrick v. Dupont**, 2014-0812 (La. App. 1 Cir. 3/11/15), 2015 WL 1129092 (unpublished), writs denied, 2015-0715, 2015-0722 (La. 6/1/15), 171 So.3d 259, 931 (plaintiffs asserted a cause of action against the bank where they alleged they were fraudulently induced to divest their ownership in a closely held company at an artificially low price); **delaVergne v. delaVergne**, 99-0364 (La. App. 1 Cir. 11/17/99), 745 So.2d 1271 (executor breached his fiduciary duty to the beneficiary of a trust); **Simmons v. Templeton**, 97-2349 (La. App. 1 Cir. 11/10/98), 723 So.2d 1009, writs denied, 98-3050, 98-3060 (La. 2/5/99), 738 So.2d 4, 5 (plaintiff sold and purchased stock where the seller misrepresented the value of the company); and **Doucet v. Lafourche Par. Fire Prot. Dist. No. 3**, 589 So.2d 517 (La. App. 1 Cir. 1991) (plaintiff claimed that defendant fire department misrepresented the coverage provided by the insurance plan made available to the volunteer firemen that allegedly led the firemen not to obtain additional insurance coverage to cover heart attacks).

8

C.C. art. 2032, which provides that an action to annul a relatively null contract must be brought within five years from the time the ground for nullity was discovered. The instant suit, filed on December 9, 2016, was filed within five years after Mr. Martin alleged he discovered the fraud on December 9, 2011.[6] Therefore, based on the allegations of the original and first amending petitions, we find that the trial court erred in granting the prescription exception as to this claim.

In his second assignment of error, Mr. Martin challenges the trial court's determination on the defendants' exception of prescription as to Mr. Martin's claim for breach of fiduciary duty, breach of loyalty, self-dealing, related-party transactions, unjust enrichment, gross negligence, mismanagement, deceit, and fraud against DQSI and the Stubbses. The applicable prescriptive periods for Mr. Martin's actions against Ms. Stubbs and Mr. Stubbs are those set forth in La. R.S. 12:1502. The pertinent prescriptive periods as to actions against the Stubbses as officers and members of DQSI are as follows, pursuant to La. R.S. 12:1502:

> C. No action for damages against any person described in Subsection A of this Section for an unlawful distribution, return of an unlawful distribution, or for breach of fiduciary duty, including without limitation an action for gross negligence, but excluding any action covered by the provisions of Subsection D of this Section, shall be brought unless it is filed in a court of competent jurisdiction and proper venue **within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act, omission, or neglect.**

---

[6] We note that the original petition was fax-filed on December 9, 2016, and also bears the file-stamp of December 14, 2016. As no question has been raised regarding Mr. Martin's compliance with La. R.S. 13:850 for the filing of the original petition, we will accept the fax-filed date as the filing date. See La. R.S. 13:850(A); **Richey v. Miller**, 2017-0462 (La. App. 1 Cir. 3/29/18), 247 So.3d 964, 966 n.2.

9

D. No action for damages against any person listed in Subsection A of this Section for intentional tortious misconduct, or for an intentional breach of a duty of loyalty, or for an intentional unlawful distribution, or for acts or omissions in bad faith, or involving fraud, or a knowing and intentional violation of law, shall be brought unless it is filed in a court of competent jurisdiction and proper venue **within two years from the date of the alleged act or omission, or within two years from the date the alleged act or omission is discovered or should have been discovered, but in no event shall an action covered by the provisions of this Subsection be brought more than three years from the date of the alleged act or omission.**
(Emphasis added).

In determining that these claims were prescribed, the trial court used the three-year prescriptive period.

Mr. Martin contends that the trial court erred in finding his claims against the Stubbses prescribed under La. R.S. 12:1502 because he alleges that while certain claims arguably are prescribed, the Stubbses continued to engage in wrongdoing over an approximate five-year period such that some of the claims are still viable. Reviewing the original and first amending petitions, and accepting all allegations as true, Mr. Martin did not allege in those petitions that the Stubbses continued to engage in wrongdoing over a five-year period, and therefore, the trial court did not err in determining that the claims set forth against the Stubbses in those petitions were prescribed. However, Mr. Martin's contention that pursuant to La. C.C.P. art. 934 the trial court should have allowed him to amend his petition to assert viable claims has merit. Louisiana Code of Civil Procedure article 934 provides that when the grounds of an objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. See **Spinks Constructions, Inc. v. Quad States Constructions, LLC**, 2017-0580 (La. App. 1 Cir. 12/21/17), 240 So.3d 215, 224. The allegations supporting Mr. Martin's contention that the Stubbses engaged in wrongdoing over five years are in

10

Mr. Martin's second amending petition, which the trial court did not consider at the hearing on prescription and which is discussed in the third assignment of error in this opinion. Therefore, the trial court erred in not allowing Mr. Martin the opportunity to amend his petition. See La. C.C.P. art. 934.

In his third assignment of error, Mr. Martin contends that the trial court erred in failing to consider his second amending petition, wherein he added claims for breach of contract and allegations that the defendants engaged in "a system of continuous tortious actions." He fax-filed the second amending petition on June 28, 2018, the day before the hearing on the exceptions was held. Mr. Martin relies on La. C.C.P. art. 1151, which states, in pertinent part, "A plaintiff may amend his petition without leave of court at any time before the answer thereto is served." See also **East Tangipahoa Development Co., LLC v. Bedico Junction, LLC**, 2008-1262 (La. App. 1 Cir. 12/23/08), 5 So.3d 238, 249-50, writ denied, 2009-0166 (La. 3/27/09), 5 So.3d 146. He argues that because the defendants had not filed or served an answer, his second amending petition was authorized to be filed without leave of court.

Mr. Martin is correct that La. C.C.P. art. 1151 allows a plaintiff to amend his petition without leave of court at any time before an answer is served. However, the issue in this case is whether the trial court must consider the plaintiff's second amending petition, which was fax-filed the day prior to the hearing on the defendants' exceptions. Louisiana Revised Statute 13:850(A) provides that filing "shall be deemed complete at the time the facsimile transmission is received by the clerk of court. ...The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with" La. R.S. 13:850(B).[7]

---

[7] Louisiana Revised Statute 13:850 states:

11

Louisiana Revised Statute 13:850(B) requires a party to deliver to the clerk of court within seven days, exclusive of legal holidays, the original document identical to the facsimile filing and filing and transmission fees. If the filing party fails to comply with any of the requirements of La. R.S. 13:850(B), "the facsimile filing shall have no force or effect." La. R.S. 13:850(C). See **Meadows v. Adams**, 2018-1544 (La. App. 1 Cir. 8/7/19), ___ So.3d ___, ___, 2019 WL 3717547. Mr. Martin fax-filed the second amending petition the day before the hearing and did not introduce any evidence or demonstrate at the hearing that he had complied with the requirements of La. R.S. 13:850(B) prior to the hearing. Therefore, at the time of the hearing, there was no evidence that the fax-filed second amending petition had any force or effect in accordance with La. R.S.

---

A. Any document in a civil action may be filed with the clerk of court by facsimile transmission. All clerks of court shall make available for their use equipment to accommodate facsimile filing in civil actions. Filing shall be deemed complete at the time the facsimile transmission is received by the clerk of court. No later than on the first business day after receiving a facsimile filing, the clerk of court shall transmit to the filing party via facsimile a confirmation of receipt and include a statement of the fees for the facsimile filing and filing of the original document. The facsimile filing fee and transmission fee are incurred upon receipt of the facsimile filing by the clerk of court and payable as provided in Subsection B of this Section. The facsimile filing shall have the same force and effect as filing the original document, if the filing party complies with Subsection B of this Section.

B. Within seven days, exclusive of legal holidays, after the clerk of court receives the facsimile filing, all of the following shall be delivered to the clerk of court:
(1) The original document identical to the facsimile filing in number of pages and in content of each page including any attachments, exhibits, and orders. A document not identical to the facsimile filing or which includes pages not included in the facsimile filing shall not be considered the original document.
(2) The fees for the facsimile filing and filing of the original document stated on the confirmation of receipt, if any.
(3) A transmission fee of five dollars.

C. If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect. The various district courts may provide by court rule for other matters related to filings by facsimile transmission.

D. The clerk may purchase equipment and supplies necessary to accommodate facsimile filings out of the clerk's salary fund.

In this case, the record contains a copy of the second amending petition bearing the fax-filed date of June 28, 2018, and a file-stamp date of July 6, 2018.

13:850(C) because there was no evidence that La. R.S. 13:850(B) had been complied with. Thus, the trial court was correct in not considering the second amending petition fax-filed by the plaintiff the day prior to the exception hearings, and Mr. Martin's assignment of error has no merit. Based on this ruling, we pretermit Mr. Martin's fourth and last assignment of error regarding his contention that his breach of contract claim asserted in his second amending petition was not prescribed because it was subject to a ten-year prescriptive period pursuant to La. C.C. art. 3499.

Therefore, after reviewing Mr. Martin's contentions in his assignments of error, we find that his contentions in his first assignment of error regarding the trial court's determination that his fraud claims against DQSI were prescribed have merit based upon the allegations in the original and first amending petitions; that his contentions regarding the trial court's determination that his claims against the Stubbses were prescribed have no merit other than that the trial court should have allowed him to amend his petition in the event he could cure the grounds for prescription; and that his remaining assignments of error as to the trial court's failure to consider this amending petition have no merit.[8]

## CONCLUSION

For all of the foregoing reasons, we affirm in part the judgment of the trial court sustaining the exception of prescription for the claims asserted by Daniel P. Martin against Shelly Stubbs and Michael Stubbs. However, we reverse in part the

---

[8] The defendants contend that if this court should determine that any claims are not prescribed, that it should find such error harmless because their peremptory exception raising the objections of preclusion by judgment and res judicata, nonjoinder, and no right of action mandates the dismissal of Mr. Martin's claims. They urge this court to consider these objections on our own motion under La. C.C.P. art. 927(B). Because we are ordering the trial court to allow Mr. Martin to amend his petition to cure the issues raised by the prescription exception, we do not believe it is appropriate to consider the other exceptions at this juncture in the case.

13

trial court's judgment granting the exception of prescription as to Daniel P. Martin's claim to nullify the assignment and operating agreement against DQSI. We remand the matter to the trial court with instructions to issue an order granting Daniel P. Martin an opportunity to amend his petition to remove the grounds for the exception of prescription as to Shelly Stubbs and Michael Stubbs, if he can, within a delay deemed reasonable by the trial court. Costs of this appeal are to be evenly split between the parties.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**