GUIDRY, J.
This is an appeal of a summary judgment dismissing claims of vicarious liability against an alleged tortfeasor's employer. For the following reasons, we affirm.
*966 FACTS AND PROCEDURAL HISTORY
On February 24, 2015, Rebecca Richey was traveling north on LA 1088[1] driving her husband, Mark Richey, to work, while accompanied by their children, Jewel and Cameron Richey. Around the same time, Jason Miller was traveling south on LA 1088 after leaving Lakeshore High School, where he had been practicing football with his son. On approaching the westbound entrance to Interstate 12, Mrs. Richey turned left, traversing the southbound lanes of LA 1088, in the path of Mr. Miller's vehicle, which subsequently collided with the Richey vehicle. The collision caused the Richey vehicle to roll onto the driver's side, travel off the roadway, and impact a "One Way" traffic sign. The occupants of the Richey vehicle sustained injuries as a result of the collision.
On March 6, 2015,[2] Mr. and Mrs. Richey, individually and on behalf of their minor children, filed a petition for damages against Mr. Miller, his employer, Cisco Systems, Inc., and their respective liability insurers, for the injuries and damages they sustained as a result of the February 24, 2015 accident. Cisco filed an answer denying any vicarious liability for the plaintiffs' claims. Sixteen months after the accident, on June 29, 2016, Cisco filed a motion for summary judgment, asserting that the plaintiffs would be unable to establish that Mr. Miller was acting in the course and scope of his employment at the time of the accident.
A hearing on Cisco's motion for summary judgment was originally scheduled for September 6, 2016, but was reset for October 11, 2016, pursuant to an unopposed motion filed by Cisco. Then on September 23, 2016, the plaintiffs filed a motion to continue the hearing and an expedited motion to compel the deposition of three Cisco employees. In the motion to continue, the plaintiffs referred to their motion to compel, and to the corporate deposition of Cisco scheduled for September 30, 2016, as the basis for their motion. The plaintiffs further alleged in the motion to continue that "upon information and belief," Cisco had no objection to removing the motion for summary judgment from the docket until the specified discovery was completed.
On September 28, 2016, Cisco filed objections on the record to several of the topics listed in the notice of the September 30, 2016 corporate deposition, which the plaintiffs had served on Cisco on September 23, 2016.
On September 30, 2016, the trial court continued the hearing on Cisco's motion for summary judgment to December 20, 2016. That date was maintained, despite Cisco filing an opposition to the plaintiffs' motion to continue on October 3, 2016, wherein it declared that it objected to and had always objected to any continuance of the hearing date. Cisco also filed an opposition to the plaintiffs' motion to compel the deposition of three of its employees, stating that the deposition of the three individuals sought to be deposed had never *967 been "noticed," that none of the individuals were ever Mr. Miller's supervisor or manager, that any relevant information could have been explored in Cisco's corporate deposition, and that Robert Covington, Mr. Miller's supervisor, was prepared to serve as the corporate representative for the corporate deposition. Cisco noted, however, that the plaintiffs had unilaterally cancelled the corporate deposition after erroneously construing its objections to the notice of the corporate deposition as a motion to quash.
On November 3, 2016, the plaintiffs filed an expedited motion to determine what topics could be covered in the corporate deposition of Cisco.
On December 5, 2016, the plaintiffs filed an opposition to Cisco's motion for summary judgment and filed a supplemental memorandum in opposition on December 13, 2016. The plaintiffs also filed a motion for partial summary "judgments" on December 13, 2016, seeking a ruling from the trial court on what they characterized as fourteen "issues as [involve] vicarious liability." Because the plaintiffs' supplemental memorandum in opposition to Cisco's motion for summary judgment was filed less than 15 days prior to date of the hearing on the motion, Cisco filed a motion to strike the supplemental memorandum in opposition based on La. C.C.P. art. 966(B)(2), which motion was later granted by the trial court.
On December 20, 2016, the trial court considered not only Cisco's motion for summary judgment, but also the plaintiffs' motion to compel and the motion to determine the topics that could be covered at the corporate deposition. After hearing the arguments of counsel, the trial court granted summary judgment in favor of Cisco, dismissing the plaintiffs' claims against it, and denied the plaintiffs' motion to compel and motion to determine the topics for the corporate deposition. After prompting by plaintiffs' counsel, the trial court also denied the plaintiffs' motion for partial summary "judgments." The plaintiffs now appeal the judgment incorporating all of those rulings, which was signed by the trial court on January 19, 2017.
ASSIGNMENTS OF ERROR
1. Appellants were entitled to pending discovery ... before Appellees' summary judgment was heard. ...
2. Appellants were entitled to have the court determine what topics would be allowed in the 1442 corporate deposition of Appellees after Appellees objected to the topics.
3. The trial court [erred] in hearing all motions at the same time.
4. The case law presented in law and argument, apply to the case at Bar.
5. The trial court [erred] in not granting Appellants' Motion for Partial Summary Judgment.
6. Appellants['] partial summary judgments raise issue of genuine material fact.
7. The trial court [erred] in granting [Appellee's] Motion for Summary Judgment.
SUMMARY JUDGMENT PROCEDURE
After adequate discovery, a motion for summary judgment is properly granted if the motion, memorandum, and supporting documents, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). The mover bears the burden of proving that he is entitled to summary judgment. However, if the mover will not bear the burden of proof at trial on the subject matter of the motion, he need only demonstrate the absence *968 of factual support for one or more essential elements of his opponent's claim, action, or defense. La. C.C.P. art. 966(D)(1). If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Bice v. Home Depot U.S.A., Inc., 16-0447, p. 3 (La. App. 1st Cir. 12/22/16), 210 So.3d 315, 318.
DISCUSSION
In their first assignment of error, the plaintiffs basically contend that the trial court erred in granting summary judgment while pending discovery was still outstanding. We find no merit in this contention.
The requirement that a summary judgment should be considered only after "adequate discovery" has been construed to mean that there is no absolute right to delay action on a summary judgment motion until discovery is complete; rather, the requirement is only that parties have a fair opportunity to carry out discovery and to present their claim. Unless a party shows a probable injustice, a suit should not be delayed pending discovery when it appears at an early stage that there is no genuine issue of fact. Welch v. East Baton Rouge Parish Metro. Council, 10-1532, p. 6 (La. App. 1st Cir. 3/25/11), 64 So.3d 249, 254. Hence, the mere contention of an opponent that he lacks sufficient information to defend a motion for summary judgment because of movant's failure to comply with discovery is insufficient to defeat the motion. Welch, 10-1532 at p. 7, 64 So.3d at 254.
A hearing on the plaintiffs' motion to compel the deposition of the three employees that Cisco refused to produce was scheduled for November 21, 2016, but neither the record nor the parties reveal why the hearing did not take place on that date. Instead, in their opposition to Cisco's motion for summary judgment, filed on December 5, 2016, the plaintiffs stated "[i]t is assumed these motions [referring to the motion to compel and a motion to determine the topics for the corporate deposition] ... [,] possibly overlooked, will all be heard on December 20, 2016." Hence, the plaintiffs did not object and appeared to have acquiesced in having the discovery motions decided at the same time as Cisco's motion for summary judgment. See Oliva v. Winn-Dixie Louisiana, Inc., 99-831, p. 8 (La. App. 5 Cir. 1/4/00), 756 So.2d 444, 448, writ denied. 00-0370 (La. 3/31/00), 759 So.2d 71 (wherein the court found that the trial court did not err in proceeding with the motion for summary judgment because the plaintiff never filed any motion to re-set the evidentiary hearing on her motion to compel when it did not take place on the day assigned, which was prior to the summary judgment hearing).
As for the motion to determine the topics for Cisco's corporate deposition, the record reveals that in a letter dated August 4, 2016, Cisco advised the plaintiffs of the exact same objections to the deposition topics that it filed into the record on September 28, 2016. The August 4, 2016 letter *969 was in response to a July 29, 2016 letter from the plaintiffs, wherein the plaintiffs requested the corporate deposition and notified Cisco of the topics to be covered. However, it was only when Cisco again presented the same objections in response to the September 23, 2016 notice of the corporate deposition that the plaintiffs sought to have the court intervene. Further, the plaintiffs cancelled the deposition, refused to pursue the corporate deposition until the court had ruled on its motion to determine the topics for the corporate deposition, and did not object when the trial court scheduled the motion to be heard on the same date as the hearing on Cisco's motion for summary judgment.
Finally, on appeal, the plaintiffs also contest the fact that they were unable to depose Mr. Miller's wife and son prior to the hearing on Cisco's motion for summary judgment. In their motion to continue filed on September 23, 2016, which was granted by the trial court, the plaintiffs noted that the depositions of Mr. Miller's wife and son were scheduled for October 14, 2016. And while counsel for the plaintiffs apparently tried to implicitly argue that the trial court should deny Cisco's motion for summary judgment because the plaintiffs had yet to depose the wife and son, we observe that counsel never expressly stated that plaintiffs were unable or had not been allowed to depose the wife and son nor was a motion to compel filed seeking their depositions. Thus, the record reveals that in all instances, the plaintiffs were less than diligent in seeking requested discovery.
Additionally, in Diversified Marine Services, Inc. v. Jewel Marine, Inc., 16-0617, p. 12 (La. App. 1st Cir. 6/2/17), 222 So.3d 1008, 1017, this court affirmed a summary judgment rendered while discovery was still ongoing, based on the plaintiffs failure to object to or otherwise move for a continuance of the hearing and also because of the confidence the plaintiff expressed in the evidence that was available at the time of the hearing to oppose the motion.
In the instant case, the plaintiffs previously sought and were granted a continuance based on their assertion that they needed to obtain the depositions of three Cisco employees and the corporate deposition of Cisco. And while the plaintiffs continued to oppose Cisco's motion for summary judgment on the same basis, they did not seek a second continuance of the hearing, which was reset for December 20, 2016. Instead, the plaintiffs argued that the available evidence established material disputed facts sufficient to defeat Cisco's motion. Contemporaneously, plaintiffs asserted that the evidence was sufficient to grant them "partial summary judgments on issues of [Cisco's] vicarious liability," including whether Mr. Miller was "in the course and scope of his employment with Defendant, Cisco Systems, at [the] time of the accident."
Therefore, considering the plaintiffs' failure to ask for a continuance of the hearing, their opposition and separate motion for partial summary "judgments" indicating that the available evidence was sufficient to decide the matter of Cisco's vicarious liability, and their overall lack of diligence in seeking to obtain the discovery desired, we find no error in the trial court rendering summary judgment, despite there being outstanding discovery. And for the same reasons, we find no merit in the plaintiffs' second and third assignments of error, as well.
The plaintiffs remaining assignments of error focus on the correctness of the summary judgment rendered, which dismissed the plaintiffs' claims against Cisco upon finding there was no genuine issue of material fact as to whether Mr. Miller was in the course and scope of his employment at the time of the February 24, *970 2015 accident. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is "material" for summary judgment purposes can only be seen in light of the substantive law applicable to the case. Holt v. Torino, 12-1579, pp. 4-5 (La. App. 1st Cir. 4/26/13), 117 So.3d 182, 185, writ denied, 13-1161 (La. 8/30/13), 120 So.3d 267.
Louisiana Civil Code article 2320 states that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." In applying this article, it has been held that an employer's liability for its employee's conduct extends only to such tortious conduct that is within the course and scope of employment. Orgeron v. McDonald, 93-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 226. Generally, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. An employer is thereby responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business. Orgeron, 93-1353 at p. 4, 639 So.2d at 226-27.
Normally, going to and from work is not an employment function for which the employer should be held liable. Further, an employer is not ordinarily liable for an employee's torts committed while going to and from lunch. Holt, 12-1579 at p. 6, 117 So.3d at 186. The rationale of this principle is that an employee usually does not begin work until he reaches his employer's premises. Therefore, unless the employee has a duty to perform a service or task en route, the employee's commute to and from work is usually considered outside the course and scope of employment. Fasullo v. Finley, 00-2659, p 5 (La. App. 4th Cir. 2/21/01), 782 So.2d 76, 81, writ denied, 01-0696 (La. 5/4/01), 791 So.2d 656.
The evidence offered in support of and in opposition to Cisco's motion for summary judgment consisted of the following: Mrs. Richey's responses to interrogatories propounded by Mr. Miller and his insurer; Mrs. Richey's responses to a request for production of documents propounded by Mr. Miller and his insurer; Mr. Miller's deposition; Mr. Miller's responses to interrogatories propounded by the plaintiffs; Mr. Miller's responses to a request for production of documents propounded by the plaintiffs; Cisco's responses to interrogatories and to requests for production of documents propounded by the plaintiffs; Mrs. Richey's responses to interrogatories and to requests for production of documents propounded by Cisco; phone records of voice calls for Mr. Miller's iPhone from February 18, 2015 to March 17, 2015; phone records of text messages for Mr. Miller's iPhone from January 26, 2015 to March 17, 2015; screen shots of iMessages from Mr. Miller's iPhone; the Uniform Motor Vehicle Traffic Crash Report for the February 24, 2015 accident; Mr. Richey's deposition; correspondence of counsel; and copies of emails sent and received for Mr. Miller's work email.
The foregoing evidence establishes that Mr. Miller was a salaried employee of Cisco, employed as a cable systems engineer designing networks for cable operators. While the payment of wages is one of the factors considered in determining whether an employee's conduct was in the course and scope of his employment, it has been held that the payment of "wages" refers to piecemeal or hourly wages rather *971 than salary. If "wages" means payment of annual salary, virtually any salaried employee could be held to be engaged in the course and scope of employment at any time. Hargrave v. Delaughter, 08-1168, p. 7 (La. App. 3d Cir. 3/4/09), 10 So.3d 245, 250. Instead, when looking at wages, the court should focus on whether the employee was being compensated for the task and the time spent engaging in activities on behalf of the employer. Jack v. McFarland, 15-405, p. 6 (La. App. 3d Cir. 10/7/15), 175 So.3d 1169, 1173.
In performing his job duties, Mr. Miller typically worked from home. He did not have predetermined work hours nor a set amount of time that he worked, but said he "maybe" worked ten hours a day. He unequivocally stated, however, that he did not work "on call." Mr. Miller's work would sometimes require that he travel to work from a customer's site or possibly a hotel, for which travel he was compensated. Mr. Miller described his job at the time of the accident[3] as being a resource technical subject matter expert who is called upon to provide a deeper explanation of a product for a customer. As he explained, he was the technical resource for company salespeople, such that he usually interacted with the company salespeople, but would also communicate directly with customers. He did not "cold call" customers, but would provide support as needed to the account teams that interfaced with customers.
Thus, considering the nature of Mr. Miller's work, clearly Mr. Miller's act of practicing football with his son, and the travel associated therewith, can in no way be viewed as a function of his employment, but instead was simply conduct instituted for purely personal considerations. Nevertheless, the evidence also discloses that at the time of the accident, Mr. Miller had in his possession a company cell phone. For use in his employment, Cisco provided Mr. Miller with an iPhone and an IP phone[4] in his home. Mr. Miller did not possess a personal cell phone. Mr. Miller stated that he probably did most of his work through email.
On the date of the accident, Mr. Miller was driving home after practicing football with his son. In his deposition, Mr. Miller testified that he did not talk to anyone while in his vehicle nor did he text. Moreover, phone records for Mr. Miller's iPhone show that there were no phone calls or text messages to or from Mr. Miller's phone during the time frame of the accident.[5] Screen shots from Mr. Miller's iPhone show an exchange of iMessages between Mr. Miller and his son at 2:22 p.m., wherein he arranged to meet his son at Lakeshore High School, and an exchange of iMessages between Mr. Miller and his wife at 3:39 p.m., wherein he informed his wife about the accident.
The evidence submitted also reveals that several emails were sent and received by Mr. Miller on the date of the accident. Mr. Miller identified most of the emails generated on the date of the accident as being work related.[6] Only five of the emails occurred *972 within proximity of the accident, which occurred roughly around 3:40 p.m. According to the evidence submitted, the only emails generated in proximity to the accident were sent at 2:34 p.m., 2:55 p.m., 2:56 p.m., 3:18 p.m., and 4:54 p.m. Of those five emails, only the 2:34 p.m. email was sent by Mr. Miller. All of the other emails were sent to Mr. Miller.
Other than the 2:34 p.m. email, the only other emails sent by Mr. Miller on the date of the accident were sent between 9:00 a.m. to 11:00 a.m. that morning. So the last email sent by Mr. Miller on the date of the accident was at 2:34 p.m. And while there were several emails sent to Mr. Miller after 2:34 p.m., including the ones previously identified, there is no evidence presented indicating that Mr. Miller read or responded to any of the subsequent emails sent to him on the date of the accident or that he was duty bound to immediately read and/or respond to them. Cf. Soileau v. D & J Tire, Inc., 97-318, p. 4 (La. App. 3d Cir 10/8/97), 702 So.2d 818, 821, writ denied, 97-2737 (La. 1/16/98), 706 So.2d 979 (wherein the court held that evidence that the employee was "duty bound" to keep his beeper on and to be ready to respond to a call supported the finding that the employee was in the course and scope of his employment at the time of the subject accident).
The determination of course and scope of employment is largely based on policy. The risks generated by an employee's activities while serving his employer's interests are properly allocated to the employer as a cost of engaging in the enterprise. However, if the employer has only a marginal relationship with the act that generated the risk and did not benefit by it, the purpose of the policy falls, and the responsibility for preventing the risk is solely upon the tortfeasor who created the risk while performing the act. Reed v. House of Decor, Inc., 468 So.2d 1159, 1162 (La. 1985).
As recognized by the court in Migliore v. Gill, 11-407, p. 6 (La. App. 5th Cir. 12/13/11), 81 So.3d 900, 903-04, writ denied. 12-0094 (La. 3/9/12), 84 So.3d 555 (quoting Thurmon v. Sellers, 62 S.W.3d 145, 154 (Tenn. Ct. App. 2001) ):
Modem technology has changed the means by which we communicate. Beepers, pagers, facsimile machines and cellular phones keep us literally at a fingertip's distance from one another. But on-call accessibility or availability of an employee does not transform his or her private activity into company business. The first question must always focus on scope of employment. Where the injury-producing activity is beyond that scope, no totality of other circumstances will result in respondeat superior liability.
Hence, in determining whether a particular accident may be associated with the employer's business enterprise, the court must essentially decide whether the particular accident is a part of the more or less inevitable toll of a lawful enterprise. When the tort becomes uncharacteristic of the business, vicarious liability is not imposed on the employer. Macaluso v. Travelers Casualty and Surety Company, 10-1478, p. 10 (La. App. 1st Cir. 2/23/11), 59 So.3d 454, 461-62.
In this case, the injury-producing activity was Mr. Miller's travel from his purely personal activity of practicing football with his son. And while Mr. Miller admitted and the record shows that Mr. Miller did perform work for Cisco on the date of the accident, there is nothing in the evidence presented that shows that Mr. Miller performed any work that benefited Cisco at the time of the accident or even after. The last act performed by Mr. Miller that could be construed as attenuating to Cisco's business was the email he sent at 2:34 *973 p.m., which was while he was still at home and not at the time of the accident.[7]
Thus, having thoroughly reviewed the evidence submitted in conjunction with the motion for summary judgment, along with La. C.C. art. 2320 and the jurisprudence applying the same, we find summary judgment dismissing the plaintiffs' claims against Cisco was properly granted. Hence, we find no merit in the remaining assignments of error raised by the plaintiffs.
CONCLUSION
For the forgoing reasons, we affirm the January 19, 2017 summary judgment dismissing the plaintiffs' claims against Cisco Systems, Inc. and cast all costs of this appeal to the plaintiffs, Rebecca and Mark Richey.
AFFIRMED.

Louisiana 1088, where the accident occurred, is a four-lane, divided highway consisting of two sets of contiguous lanes separated by a median for travel in opposite directions.

Many of the documents in record before us are annotated with a "fax filed" date, as well as a separate "filed" date. As no question has been raised regarding compliance with La. R.S. 13:850, throughout this opinion, we shall refer to documents as being filed on the fax-filed date indicated where applicable. See Hunter v. Morton's Seafood Restaurant and Catering, 07-2396, p. 10 (La. App. 1st Cir. 7/3/08), 992 So.2d 1078, 1084, aff'd, 08-1667 (La. 3/17/09), 6 So.3d 152.

Mr. Miller testified that in January 2016, his position changed so that he currently worked for a business unit doing the same type of work.

Mr. Miller described the IP phone as a telepresence video system that allows him to have video conversations with remote people.

The phone records, which list information in military time, show two voice calls, one at 10:27 (a.m.) and the other 19:43 (7:43 p.m.), and two text messages, one at 22:47 (10:47 p.m.) and one at 22:49 (10:49 pm.) on the date of the accident.

There were emails from a bicycle club that Mr. Miller identified as not being work related.

Mr. Miller testified that he left his office to go practice football with his son a little before 3:00 p.m., "maybe 2:50, something like that."