# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2025 CA 0054

OSAZUWA AWANBOR

VERSUS

DELORES L. WILLIAMS, GEICO INSURANCE COMPANY,
RHORER PROPERTIES, LLC, AND HEY PENELOPE, L.L.C.

Judgment Rendered: **AUG 0 4 2025**

* * * * * *

On Appeal from the Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. 713559

Honorable Ronald R. Johnson, Judge Presiding

* * * * * *

| | |
|---|---|
| David M. Bienvenu, Jr.<br>Phillip E. Foco<br>John A. Viator<br>Katherine E. Roberts<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellant<br>Osazuwa Awanbor |
| Charles L. Chassaignac, IV<br>J. Murphy DeLaune<br>Micah O. Udeh<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>Rickey Heroman's Enterprises, LLC d/b/a<br>Rickey Heroman's Florist & Gifts |
| L. Dean Fryday, Jr.<br>Baton Rouge, Louisiana<br>-and-<br>Christian B. Bogart<br>Linda H. Adams<br>Metairie, Louisiana | Counsel for Defendant/Appellee<br>Rhorer Properties, LLC and<br>State Farm Fire and Casualty Company |
| Steve LeBlanc<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellee<br>JDK Associates, LLC d/b/a<br>Greater Baton Rouge Signs |

* * * * * *

**BEFORE: McCLENDON, C.J., LANIER AND BALFOUR, JJ.**

**McCLENDON, C.J.**

Plaintiff-appellant appeals a summary judgment dismissing his claims against the alleged tortfeasor's employer, defendant-appellee. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

On September 25, 2021, Delores Williams was traveling to work at Rickey Heroman's Enterprises, LLC d/b/a Rickey Heroman's Florist & Gifts (Heroman's Enterprises) in a 2008 GMC Acadia SUV. At the intersection of Jefferson Highway and Thibodeaux Avenue in the Parish of East Baton Rouge, the SUV owned and operated by Ms. Williams collided with a 2006 Harley Davidson motorcycle owned and operated by Osazuwa Awanbor. The first 9-1-1 call following the accident was placed at 9:24 a.m. As a result of injuries sustained in the collision, Mr. Awanbor's right leg was amputated below the knee.

Mr. Awanbor filed suit against numerous defendants, including Heroman's Enterprises.[1] Heroman's Enterprises was named based on Ms. Williams' deposition testimony that she placed cell phone calls to notify Heroman's Enterprises she was running late shortly before and after the collision occurred. Mr. Awanbor maintained Heroman's Enterprises was vicariously liable for Ms. Williams' negligence and directly liable for its own negligence, specifically alleging, in pertinent part:

22(a)
Upon information and belief, at the time of the subject accident, Ms. Williams was employed by [Heroman's Enterprises].

22(b)
Upon information and belief obtained through phone records in the course of discovery, at the time of the subject motor vehicle accident and immediately prior to the accident, Ms. Williams was using her cellphone to engage in work related phone communications with her employer, [Heroman's Enterprises], and was acting in the course and scope of her employment at the time of the subject motor vehicle accident with [Mr. Awanbor], which was a substantial cause of his injuries. As the employer of Ms. Williams, [Heroman's Enterprises] is vicariously liable for the negligence of Ms. Williams and is liable for its own independent negligence.

---

[1] Mr. Awanbor's original petition for damages named as defendants Ms. Williams; her liability insurer, Geico Insurance Company; Rhorer Properties, L.L.C.; and Hey Penelope, L.L.C. Mr. Awanbor's first supplemental and amended petition named JDK Associates, L.L.C. d/b/a Greater Baton Rouge Signs as an additional defendant. Mr. Awanbor's second supplemental and amended petition named Heroman's Enterprises. Mr. Awanbor's third supplemental and amended petition named State Farm Fire and Casualty Company in its capacity as the liability insurer of Rhorer Properties, L.L.C. Mr. Awanbor's claims against Ms. Williams, Geico Insurance Company, and Hey Penelope, L.L.C. have been compromised and dismissed.

2

22(c)

Moreover, the decision of Ms. Williams and [Heroman's Enterprises] to engage in a phone conversation violates the standard of reasonable care and constitutes negligence and/or fault giving rise to liability for the accident that permanently injured and disabled Mr. Awanbor.

22(d)

The actual and/or vicarious fault and/or negligence of Defendants, Ms. Williams and [Heroman's Enterprises,] was a substantial factor in[]causing the accident and injuries sustained by Mr. Awanbor.

Heroman's Enterprises answered and denied liability for Mr. Awanbor's damages.

Heroman's Enterprises moved for summary judgment on February 7, 2024, arguing that Ms. Williams was "merely on her way to work" and was not on an employment-related mission or otherwise in the course and scope of her employment. Thus, Heroman's Enterprises maintained Mr. Awanbor could not satisfy his burden of proving that Heroman's Enterprises was vicariously or directly liable for the subject accident.

Mr. Awanbor opposed Heroman's Enterprises' summary judgment motion, arguing genuine issues of material fact precluded summary judgment. Mr. Awanbor argued disputed facts existed regarding whether Ms. Williams was using her cell phone to perform an employment-related phone call at the time of the accident. Mr. Awanbor further argued there were disputed facts as to whether Heroman's Enterprises was independently negligent for requiring employees to give notice of expected tardiness, but failing to prohibit employees from using a cell phone while operating a vehicle to do so.

Following a hearing on June 27, 2024, the trial court signed a written judgment on September 16, 2024, granting summary judgment in favor of Heroman's Enterprises. The judgment provided, in pertinent part:

> **IT IS FURTHER ORDERED, DECREED, AND ADJUDGED**, that there are no genuine issues of material fact and thus the Motion for Summary Judgment filed by Defendant, Rickey Heroman's Enterprises, LLC, is **GRANTED**, and Plaintiff's claims against Rickey Heroman's Enterprises, LLC are dismissed with prejudice, and at Plaintiff's cost.
>
> **IT IS FURTHER ORDERED, DECREED, AND ADJUDGED**, that the Court adopts the Memorandum in Support of the Motion for Summary Judgment filed by Rickey Heroman's Enterprises, LLC as its reasons for judgment.

Mr. Awanbor has appealed.

3

## ASSIGNMENTS OF ERROR

In Mr. Awanbor's first assignment of error, he contends the trial court erred in granting summary judgment because genuine issues of material fact precluded summary judgment on the issue of whether Heroman's Enterprises was vicariously liable for Ms. Williams' negligence in causing the accident. In Mr. Awanbor's second assignment of error, he maintains the trial court erred because genuine issues of material fact precluded summary judgment on the issue of whether Heroman's Enterprises was directly liable for its own negligence.

## SUMMARY JUDGMENT LAW

Appellate courts review the grant or denial of summary judgment *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, *i.e.*, whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law.[2] **Diaz-Molina v. Flower**, 2023-01135 (La. 12/19/23), 374 So.3d 950, 952. Pursuant to LSA-C.C.P. art. 966(D)(1), the burden of proof rests with the party moving for summary judgment. However, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover is not required to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. See LSA-C.C.P. arts. 966(D)(1) and 967(B); **Crawford Electric Supply Company, Inc. v. Loga Holdings LLC**, 2024-0870 (La.App. 1 Cir. 2/21/25), 406 So.3d 634, 636-637, writ denied, 2025-00463 (La. 6/17/25), ___ So.3d ___, 2025 WL 1692356. Once this is done, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. LSA-C.C.P. art. 966(D)(1). If the

---

[2] We note that the September 16, 2024 judgment provided, in part, that the trial court adopted Heroman's Enterprises' memorandum in support of its summary judgment motion "as its reasons for judgment." However, because this court reviews summary judgments *de novo*, we afford no deference to the trial court's underlying reasoning for its judgment, nor do we address the trial court's adoption of a party's pleading as its reasons for judgment. See **John River Cartage, Inc. v. Louisiana Generating, LLC**, 2020-0162 (La.App. 1 Cir. 3/4/20), 300 So.3d 437, 453 n.12, citing **King v. Allen Court Apartments**, 2015-0858 (La.App. 1 Cir. 12/23/15), 185 So.3d 835, 839, writ denied, 2016-0148 (La. 3/14/16), 189 So.3d 1069.

4

non-moving party fails to produce factual support in opposition sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, LSA-C.C.P. art. 966(D)(1) mandates the motion for summary judgment be granted. **Bertrand v. Jefferson Arms Apartments, LLC**, 2022-1195 (La.App. 1 Cir. 4/14/23), 366 So.3d 595, 600.

In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. **Chevis v. Rivera**, 2021- 0124 (La.App. 1 Cir. 9/24/21), 329 So.3d 831, 834, writ denied, 2021-01546 (La. 12/21/21), 330 So.3d 317. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, summary judgment is appropriate. A material fact is one that potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. **Id**. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material for summary judgment purposes can only be seen in light of the substantive law applicable to the case. **Richey v. Miller**, 2017- 0462 (La.App. 1 Cir. 3/29/18), 247 So.3d 964, 970.

## SUBSTANTIVE LAW

As set forth above, Mr. Awanbor alleged that Heroman's Enterprises is both vicariously liable and directly liable for his injuries.[3] A vicarious liability claim under the doctrine of *respondeat superior* and a direct liability claim of negligence, such as negligent hiring, supervision, training, retention, or entrustment, are separate, independent, and distinct theories of liability. See **Martin v. Thomas**, 2021-1490 (La. 6/29/22), 346 So.3d 238, 243-247 (citing **Roberts v. Benoit**, 605 So.2d 1032, 1037 (La. 1991)); **Jameson v. Montgomery**, 2022-01784 (La. 5/5/23), 366 So.3d 1210, 1216 n.7, rehearing denied, 2022-01784 (La. 6/27/23), 364 So.3d 1153.

---

[3] The Louisiana Supreme Court in **Martin v. Thomas**, 2021-01490 (La. 6/29/22), 346 So.3d 238, held a plaintiff may pursue both a direct negligence claim and a vicarious liability claim against an employer, even if the employer stipulates that the employee was in the course and scope of employment at the time of the injury. See **Martin**, 346 So.3d at 240; **Fox v. Nu Line Transport, L.L.C.**, 2022-00980 (La. 10/4/22), 347 So.3d 857.

5

**Vicarious Liability**

Vicarious liability is a method of holding one party liable for the conduct of another. **Martin**, 346 So.3d at 243 n.3. In Louisiana, the vicarious liability of employers, also known as the doctrine of *respondeat superior*,[4] is based upon LSA-C.C. art. 2320, which states that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."[5] **Berthelot v. Indovina**, 2021-0517 (La.App. 1 Cir. 12/22/21), 340 So.3d 119, 124, writ denied, 2022-00165 (La. 3/15/22), 334 So.3d 394; see also **Brasseaux v. Town of Mamou**, 1999-1584 (La. 1/19/00), 752 So.2d 815, 820. Generally, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. **Berthelot**, 340 So.3d at 124-125.

Courts consider four factors when assessing vicarious liability, including whether the tortious act: (1) was primarily employment-rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during working hours; and (4) occurred on the employer's premises. It is not necessary that each factor is present in each case, and each case must be decided on its own merits. **Ellender v. Neff Rental, Inc.**, 2006-2005 (La.App. 1 Cir. 6/15/07), 965 So.2d 898, 901. Rather, the determinative question is whether the employee's tortious conduct was so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal

---

[4] The body of Louisiana law related to the imposition of liability on the master, or employer, for the delicts of the servant, or employee, is generally referenced as the doctrine of *respondeat superior*. See **Brasseaux v. Town of Mamou**, 1999-1584 (La. 1/19/00), 752 So.2d 815, 820.

[5] LSA-C.C. art. 2320 provides in full:

> Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
>
> Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
>
> In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it.
>
> The master is answerable for the offenses and *quasi*-offenses committed by his servants, according to the rules which are explained under the title: *Of quasi-contracts, and of offenses and quasi-offenses*.

considerations entirely extraneous to the employer's interest. If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service. **Liberty Mutual Fire Insurance Company v. Harris**, 2022-0429 (La.App. 1 Cir. 11/4/22), 355 So.3d 628, 634, writ denied, 2022-01747 (La. 2/7/23), 354 So.3d 671. In a negligence case, as distinguished from an intentional tort case, the court need only determine whether the servant's general activities at the time of the tort were within the scope of employment. **Ellender**, 965 So.2d at 901.

Normally, going to and from work is not an employment function for which the employer should be held liable. Further, an employer is not ordinarily liable for an employee's torts committed while going to and from lunch. **Richey**, 247 So.3d at 970. The rationale of this principle is that an employee usually does not begin work until he reaches his employer's premises. "Therefore, unless the employee has a duty to perform a service or task [*en route*,] the employee's commute to and from work is usually considered outside the course and scope of employment." **Berthelot**, 340 So.3d at 125.

**Direct Liability**

A direct claim against an employer for the torts of an employee based on the employer's alleged negligence in hiring, retaining, or supervising the employee generally is governed by the same duty-risk analysis used for all negligence cases in Louisiana. **Taylor v. Home Depot USA, Inc.**, 2012-1587 (La.App. 1 Cir. 8/9/13), 2013 WL 4039945, *3 (unpublished), writ denied, 2013-2164 (La. 11/22/13), 126 So.3d 489; **Thomas v. Owe Insurance Co.**, 2024-270 (La.App. 5 Cir. 4/9/25) ___ So.3d ____, ____, 2025 WL 1064943, *3. The general negligence statute, set forth in LSA-C.C. art. 2315, provides that a tortfeasor must compensate a tort victim for all of the damages occasioned by his act and must put the victim in the position he would have occupied if the tort had not been committed. **Collier v. Board of Supervisors of Louisiana State University & Agricultural & Mechanical College**, 2023-1211 (La.App. 1 Cir. 7/22/24), 395 So.3d 6, 13, writ denied, 2024-01049 (La. 12/11/24), 396 So.3d 966.

Under Louisiana law, an employer can only be directly liable under theories of negligent hiring, supervision, training and retention, and negligent entrustment if the

7

employee is at fault. The employer cannot be liable if the employee is not at fault. **Martin**, 346 So.3d at 247.

As a matter of law, an employer has no obligation to supervise and/or train an employee regarding acts that are outside the course and scope of the employment. **Liberty Mutual Fire**, 355 So.3d at 638 n.6; see also **Powell v. Gramercy Insurance Company**, 2013-928 (La.App. 5 Cir. 4/23/14), 140 So.3d 324, 327 ("RaceTrac has no duty to train its employees regarding acts that are outside the course and scope of their employment") and **Conner v. Lemelle**, 2019-843 (La.App. 3 Cir. 5/13/20), 298 So.3d 361, 370 n.5, writ denied, 2020-00723 (La. 10/6/20), 302 So.3d 528.

## DISCUSSION

Heroman's Enterprises argued in its summary judgment motion that Mr. Awanbor cannot satisfy his burden of proving Heroman's Enterprises is vicariously or directly liable for the injuries he sustained in the accident. Heroman's Enterprises submitted the following documents in support of its motion for summary judgment: Mr. Awanbor's original and supplemental and amended petitions; Ms. Williams' deposition; the deposition of Dwayne Jackson, Heroman's Enterprises' manager at the time of accident and on the date of his deposition; the deposition of Rickey Heroman, Heroman's Enterprises' owner at the time of accident and on the date of his deposition; and Ms. Williams' September 2021 time sheets.[6]

Heroman's Enterprises' summary judgment submissions established the general facts of Ms. Williams' employment. Ms. Williams began working as a salesclerk at Rickey Heroman's Florist & Gifts' Towne Center location beginning in September 2013. Her job duties included overseeing the sales floor, helping customers on the sales floor, taking care of flowers and plants, cleaning, checking the cooler for arrangements, and answering the phones. Ms. Williams' job responsibilities did not include making deliveries, and Heroman's Enterprises did not provide Ms. Williams with any reimbursement, subsidy, or vehicle allowance. Ms. Williams was the sole owner of the 2008 GMC Acadia she was

---

[6] The judgment on appeal explicitly states that these documents were admitted into evidence without objection.

8

operating at the time of the accident, and she did not use her vehicle for purposes such as making sales calls or meeting customers.

Heroman's Enterprises paid Ms. Williams hourly, and her regular hours were 9 a.m. to 5 or 6 p.m. However, it is undisputed that Ms. Williams was chronically late.[7] While Heroman's Enterprises had an employee handbook and a written policy regarding tardiness, said policy was not included in the record on appeal. Nevertheless, it was established that Ms. Williams was expected to give notice when she was running late, because the store needed to account for its staff and arrange for customers to be managed based on when employees would arrive at work. Mr. Heroman testified Ms. Williams usually would not call unless she was running behind by thirty minutes or more, while Mr. Jackson testified Ms. Williams would call every time she was running late. Though Mr. Heroman rarely spoke with his salesclerks about business by cell phone, Ms. Williams usually called Mr. Heroman first when she was running late, and would call the shop if she could not reach Mr. Heroman.

Regarding the day of the accident, Heroman's Enterprises successfully established that Ms. Williams was not on an employment-related errand or mission at the time of the accident. Ms. Williams and Mr. Heroman both testified Ms. Williams was not "doing anything" for Heroman's Enterprises at the time of the accident, other than driving to work. Additionally, Mr. Jackson testified that, to his knowledge, Ms. Williams was not on a delivery or any other errand for Heroman's Enterprises at the time of the accident.

However, Heroman's Enterprises' summary judgment submissions presented conflicting evidence with respect to Ms. Williams' cell phone calls before, during, and after the accident. While Ms. Williams testified she spoke to Mr. Heroman on the phone both before and after the accident, Mr. Heroman testified he did not speak to Ms. Williams until after the accident occurred. More specifically, Ms. Williams stated:

> I can't remember if I called [Mr. Heroman] first. Because I can't remember if I dialed 911, but the reason I called [Mr. Heroman] first is because he had called me while I was sitting there waiting for the traffic to clear and I told him exactly that the traffic was heavy and I was waiting for the traffic to clear up. And maybe five minutes or so after that, then I ended up calling

---

[7] Ms. Williams was still employed at Heroman's Enterprises as of May 2023. Ms. Williams' pattern of running late, and calling to notify Heroman's Enterprises of same, remained consistent at the time of Mr. Jackson's deposition.

him back or - - I really don't know how many minutes, but somewhere between that time frame. I can't... But I was not on the phone [at the time of the accident].

Ms. Williams further stated she had the call "on speaker" and was "still sitting at the stop sign" when she spoke to Mr. Heroman prior to the accident, though the conversation ended before she left the stop sign.

Contradicting Ms. Williams' testimony, Mr. Heroman consistently stated that he did not speak to Ms. Williams prior to the accident. He described receiving a call from Mr. Jackson, who told Mr. Heroman he had spoken to Ms. Williams when she called the store after the wreck. Mr. Heroman testified he then called Ms. Williams and went to the scene of the accident at Mr. Jackson's suggestion. This testimony was consistent with Heroman's Enterprises' response to interrogatories. However, Mr. Jackson remembered Ms. Williams calling to notify Heroman's Enterprises she had been in an accident and was running late, but did not remember whether he answered her phone call.

Ms. Williams' cell phone records were extensively reviewed during Mr. Heroman's deposition. The records reflect three phone calls placed from Ms. Williams' cell phone number to Mr. Heroman's cell phone number on the morning of the accident: a fifteen second call at 9:20 a.m.; a sixty second call at 9:22 a.m.;[8] and a two second call at 9:22 a.m. Ms. Williams' cell phone records also reflected that she initiated a thirty-seven second call at 9:23 a.m., which Mr. Heroman believed was when Ms. Williams notified the store she had been in an accident and would be late. Ms. Williams' cell phone records further reflected that Mr. Heroman initiated one call to Ms. Williams at 9:27 a.m. that lasted for 85 seconds. Mr. Heroman repeatedly testified that he did not call Ms. Williams prior to the accident, and he did not speak to Ms. Williams until after the accident occurred. However, Mr. Heroman admitted that if Ms. Williams called him at 9:20 a.m., the only reason would have been to talk about something to do with her employment.

Despite the disputed facts regarding when Ms. Williams and Mr. Heroman first spoke on the phone the day of the accident, Heroman's Enterprises' submissions clearly

_____

[8] During the deposition, the sixty second call and the two second call were sometimes characterized as voicemails left by Ms. Williams for Mr. Heroman on the day of the accident. However, Mr. Heroman did not recall receiving a voicemail from the day of the accident, and our review of the phone records does not indicate Ms. Williams left Mr. Heroman a voicemail on the day of the accident.

established that Ms. Williams was traveling to work at the time of the accident, and that Ms. Williams did not have a duty to perform a service or task on behalf of her employer while *en route* to work.[9] Thus, Heroman's Enterprises successfully pointed out the absence of factual support for Mr. Awanbor's claim that Heroman's Enterprises was vicariously liable because Ms. Williams was in the course and scope of her employment with Heroman's Enterprises at the time of the accident.[10] See **Richey**, 247 So.3d at 970; **Berthelot**, 340 So.3d at 125. Additionally, as to direct liability, Heroman's Enterprises' submissions also contained Ms. Williams' deposition testimony that she was not on the phone at the time the accident occurred. Therefore, Heroman's Enterprises pointed out an absence of factual support for Mr. Awanbor's allegation that Heroman's Enterprises was independently negligent for engaging in a phone conversation with Ms. Williams while she was driving. Accordingly, the burden of proof shifted to Mr. Awanbor to produce factual support sufficient to establish a genuine issue of material fact as to both his vicarious liability claim and his direct negligence claim against Heroman's Enterprises. See LSA-C.C.P. art. 966(D)(1) and **Bertrand**, 366 So.3d at 600.

In opposition to Heroman's Enterprises' summary judgment motion, Mr. Awanbor argued that Heroman's Enterprises was vicariously and directly liable for the accident because Heroman's Enterprises required Ms. Williams to notify the store or Mr. Heroman when she was running later than usual; because Heroman's Enterprises did not prohibit

---

[9] We note that Mr. Heroman and Mr. Jackson were questioned about the September 2021 delivery log. Consistent with all other testimony that Ms. Williams did not make deliveries for Heroman's Enterprises, Mr. Heroman testified that the delivery log showed Ms. Williams made "zero trips" in September 2021. Mr. Heroman and Mr. Jackson were both unable to explain the significance of a delivery log note from the date of the accident reading "DW[,]" though Mr. Heroman stated that Ms. Williams' initials were perhaps in the delivery log because "the delivery route sheet, keeps employees in there, current and past[.]"Mr. Awanbor does not argue, and on our *de novo* review we do not find, that this note creates a genuine issue of material fact contradicting the determination that Ms. Williams was traveling to work and was not making a delivery on behalf of Heroman's Enterprises at the time of the accident.

[10] We note that the Second and Fifth Circuits have recognized three exceptions to the general going and coming rule. See **Lowe v. Old American Indemnity Company**, 54,656 (La.App. 2 Cir. 8/10/22), 345 So.3d 1171, 1177; **Rabee v. Louisiana Department of Public Safety & Corrections**, 23-384 (La.App. 5 Cir. 11/2/23), 378 So.3d 71, 75 n.3, writs denied, 2023-01620 (La. 2/14/24), 379 So.3d 30, and 2023-01651 (La. 2/14/24), 379 So.3d 34. Under these exceptions, an employee may be in the course and scope of employment when traveling to or from work if: the employer provides the transportation; the employer provides wages or expenses for the time the employee spends travelling; or the operation of the vehicle is incidental to or in performance of the employee's responsibility. While not bound by this jurisprudence, we note that our decision herein is consistent with these cases, as Heroman's Enterprises successfully pointed out an absence of evidence that Ms. Williams' vehicle was provided by or used for Heroman's Enterprises business; an absence of evidence that Heroman's Enterprises provided wages or expenses for Ms. Williams' travel; and an absence of evidence that Ms. Williams' operation of her vehicle was incidental to or in performance with her employment duties. See **Lowe**, 345 So.3d at 1177; **Rabee**, 378 So.3d at 75 n.3.

11

Ms. Williams or other employees from communicating with Heroman's Enterprises while using their cell phone and simultaneously operating a vehicle; and because Ms. Williams was on the phone with Heroman's Enterprises and complying with the requirement to give notice of her tardiness at the time the accident occurred. In addition to several of the documents offered in connection with Heroman's Enterprises' summary judgment motion, Mr. Awanbor submitted[11] Ms. Williams' cell phone records from the date of the accident, attached as an exhibit to Mr. Heroman's deposition; a "Sample Distracted Driving Policy" containing language prohibiting the use of electronic devices while driving, together with an affidavit attesting the sample policy was downloaded from the website for the National Safety Council; Mr. Awanbor's March 4, 2022 answers to interrogatories propounded by defendant Hey Penelope, LLC; the deposition of Monte Garcia-Jackson, a witness to the accident and its immediate aftermath (Ms. Garcia); and an excerpt of the deposition of Trini Rhorer, the owner of property near the intersection where the accident occurred.

Ms. Garcia testified she is a hairstylist and rents a suite from Ms. Rhorer in a salon near the intersection where the accident occurred. On the morning of the accident, Ms. Garcia was waiting inside the salon before her first appointment and had an unobstructed view through a window of the intersection where the accident occurred. Pertinent portions of Ms. Garcia's deposition are as follows:

Q. Did you observe an accident on September 25th, 2021?

A. Yes.

Q. Just tell us in your own words what you observed.

A. It was the morning. I was coming into work, and I heard a crash, and then I [saw] the collision happen. It was, I believe, a white SUV, and it was an African American female driving, but she was on the phone already.

...

Q. You said that the driver [of the white SUV] was on the phone?

A. Yes.

Q. And that was at the time of impact?

---

[11] The judgment on appeal explicitly states that these documents were admitted into evidence without objection.

A.    Yes.

...

Q.    Okay. Earlier you testified that you saw her on the cell phone. Did you see her on the cell phone while she was stopped at the stop sign?

A.    Yes.

...

Q.    In other words, [Ms. Williams] was on the left passenger side - - on the driver's side of the vehicle. You can see directly into the driver window from your location[?]

A.    Yes.

Q.    Okay. Was she on the phone from the first moment you made visual contact with her?

A.    Yes.

...

Q.    And what did you observe when you walked past the SUV and Ms. Williams, if anything?

A.    Ms. Williams was just on the phone. I had to pass her up to get to [Mr. Awanbor].

Q.    So was she on the phone the entire time between when you first observed there being an accident and when you called 9-1-1 and started proceeding toward Mr. Awanbor in the intersection?

A.    Yes.

Ms. Garcia testified Ms. Williams remained on her cell phone after the accident, and she heard Ms. Williams say "okay, I'll see you in a second" at the end of the call. Shortly afterwards, Ms. Garcia saw an individual with white hair driving a Mercedes – presumably, Mr. Heroman – arrive and speak to Ms. Williams.

Having completed a thorough *de novo* review of Mr. Awanbor's submissions, we recognize that Mr. Awanbor established Ms. Williams placed phone calls to Mr. Heroman and Heroman's Enterprises in the window of time surrounding the accident. We also recognize that Ms. Garcia's testimony creates a question of fact as to whether Ms. Williams was on the phone with Heroman's Enterprises at the time the accident occurred. However, we disagree with Mr. Awanbor's argument that this question of fact is material and precluded summary judgment.

It is undisputed that Ms. Williams was traveling to work at the time the accident occurred. Therefore, Ms. Williams was outside the course and scope of her employment

13

with Heroman's Enterprises at the time of the accident, unless she had a duty to perform a service or task for Heroman's Enterprises *en route*. See LSA-C.C.P. art. 966(D)(1); **Berthelot**, 340 So.3d at 125; **Ellender**, 965 So.2d at 901. While Mr. Awanbor contends that Ms. Williams had a duty to perform a service or task for Heroman's Enterprises *en route* because she was required to notify Heroman's Enterprises when she was running late, we disagree. There is no evidence that Ms. Williams had a duty to perform *any* service or task for Heroman's Enterprises while *en route*, nor was there evidence that Ms. Williams was expected or required to give notice she was running late while *en route*. Ms. Williams could have notified Heroman's Enterprises that she anticipated arriving late before she left her home, or she could have stopped and parked her vehicle before initiating a call; the decision to call *while driving*, rather than at any other point in time, was solely Ms. Williams'.

As recognized by this court in **Richey**, 247 So.3d at 972 (quoting **Migliore v. Gill**, 2011–0407 (La.App. 5 Cir. 12/13/11), 81 So.3d 900, 903-904, writ denied, 2012-0094 (La. 3/9/12), 84 So.3d 555, in turn quoting **Thurmon v. Sellers**, 62 S.W.3d 145, 154 (Tenn. Ct. App. 2001)):

> Mode[rn] technology has changed the means by which we communicate. Beepers, pagers, facsimile machines and cellular phones keep us literally at a fingertip's distance from one another. But on-call accessibility or availability of an employee does not transform his or her private activity into company business. The first question must always focus on scope of employment. Where the injury-producing activity is beyond that scope, no totality of other circumstances will result in [*respondeat superior*] liability.

Hence, in determining whether a particular accident may be associated with the employer's business enterprise, the court must essentially decide whether the particular accident is a part of the more or less inevitable toll of a lawful enterprise. When the tort becomes uncharacteristic of the business, vicarious liability is not imposed on the employer. **Richey**, 247 So.3d at 972. In this matter, the record does not contain any evidence that Ms. Williams' tortious conduct was so closely connected in time, place and causation to her employment duties – *i.e.*, overseeing the sales floor, helping customers on the sales floor, taking care of flowers and plants, cleaning, checking the cooler for arrangements, and answering the phones – as to be regarded as a risk of harm fairly attributable to Heroman's Enterprises' business. See **Ellender**, 965 So.2d at 901. Thus,

14

considering the legal precepts set forth above and the particular facts of this case, we conclude that Ms. Williams was not acting within the course and scope of her employment at the time the accident occurred. See **Ellender**, 965 So.2d at 902. Mr. Awanbor's first assignment of error lacks merit.[12] See LSA-C.C.P. art. 966(D)(1).

We next address Mr. Awanbor's allegation Heroman's Enterprises was directly liable for its own negligence in "allowing" Ms. Williams to make work-related communications while operating her vehicle on her way to work. In support of his assertion that Heroman's Enterprises owed and breached a duty to properly train Ms. Williams not to use her phone while driving, Mr. Awanbor argued the National Safety Council's sample distracted driving policy indicated that employers whose employees use cell phones as part of their job should issue policies that prohibit cell phone use while operating a vehicle. We do not question or dispute the wisdom of such a policy. However, as a matter of law, an employer has no obligation to supervise and/or train an employee regarding acts that are outside the course and scope of the employment. **Liberty Mutual**, 355 So.3d at 638; see also **Powell**, 140 So.3d at 327 and **Conner**, 298 So.3d at 370 n.5. We have already concluded that Ms. Williams was not acting within the course and scope of her employment at the time of the accident, and we further note that the record clearly reflects Ms. Williams did not make deliveries or otherwise use her vehicle in the course and scope of her employment with Heroman's Enterprises. Therefore, Heroman's Enterprises had no duty to train Ms. Williams regarding safe driving practices. Accordingly, Mr. Awanbor did not produce factual support sufficient to establish a genuine issue of material fact as to his direct liability claim against Heroman's Enterprises. See LSA-C.C.P. art. 966(D)(1) and **Bertrand**, 366 So.3d at 600. Mr. Awanbor's second assignment of error lacks merit.

---

[12] While we note Mr. Awanbor's reliance on this court's decision in **Ellender v. Neff Rental, Inc.**, 2006-2005 (La.App. 1 Cir. 6/15/07), 965 So.2d 898, in support of his argument that calling to notify Heroman's Enterprises she was running late for work would place Ms. Williams in the course and scope of her employment, **Ellender** is significantly distinguishable from this matter. In **Ellender**, the employee's duties required extensive travel, and the employer provided the employee with a cell phone, fuel, and reimbursement for the use of his personal vehicle. The employee regularly used the cell phone, fuel, and truck which conducting business on behalf of his employer, and was doing so while driving to lunch when the accident occurred. **Ellender**, 965 So.2d at 898-902. Here, Heroman's Enterprises did not provide Ms. Williams with her cell phone, fuel, or any reimbursement for the use of her personal vehicle; Ms. Williams did not regularly use her own vehicle, or drive at all, while engaged in her employment duties; and Ms. Williams was not conducting business on behalf of Heroman's Enterprises at the time the accident occurred.

## CONCLUSION

The September 16, 2024 judgment of the trial court granting summary judgment in favor of Rickey Heroman's Enterprises, LLC d/b/a Rickey Heroman's Florist & Gifts, and dismissing the claims of Osazuwa Awanbor against Rickey Heroman's Enterprises, LLC d/b/a Rickey Heroman's Florist & Gifts, is affirmed. Costs of this appeal are assessed to Osazuwa Awanbor.

**AFFIRMED.**